UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT L. HART,

                 Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.
_____

**REPORT AND
RECOMMENDATION**

11-CV-119
(TJM/VEB)

### I. INTRODUCTION

In August of 2008, Plaintiff Robert L. Hart applied for Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that he has been unable to work since September of 2004.  The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorney, Steven R. Dolson, Esq., of counsel, commenced this action seeking judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 10).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On August 22, 2008, Plaintiff applied for disability benefits under the Social Security Act, alleging that he had been unable to work since September 22, 2004. (T at 51, 59).[1] The Commissioner initially denied the application and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, on March 18, 2010, before ALJ Elizabeth Koennecke.  (T at 324). Plaintiff appeared with Attorney Dolson and testified. (T at 37-49).

On July 13, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 13-23).  The ALJ's decision became the Commissioner's final decision on December 10, 2010, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 5-8).

Plaintiff, by and through Attorney Dolson, commenced this action by filing a Complaint on February 2, 2011. (Docket No. 1).   The Commissioner interposed an Answer on May 20, 2011.  (Docket No. 5).  Plaintiff filed a supporting Brief on July 6, 2011. (Docket No. 7).  The Commissioner filed a Brief in opposition on August 17, 2011. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons set forth below, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and this case be dismissed.

## II. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 22, 2008, the application date. (T at 15). The ALJ found that Plaintiff had the following impairment considered "severe" under the applicable Social Security Regulations (the "Regulations"): degenerative disc disease of the lumbar spine. (T at 15).  The ALJ found that several impairments alleged by Plaintiff were either non-severe or not medically determinable impairments, including knee pain, keratosis of the feet, headaches, hip problems, high cholesterol and GERD, depression, and borderline intellectual functioning. (T at 16-18).

The ALJ determined that Plaintiff's medically determinable impairment did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 18).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to sit, stand, and walk without limitation.  She concluded that Plaintiff could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The ALJ determined that Plaintiff could, on a sustained basis, understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 18-22).  The ALJ found that Plaintiff had no past relevant work. (T at 22).

Considering Plaintiff's residual functional capacity, age (49 years old on the date the application was filed, 51 years old on the date of the ALJ's decision), education (limited), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.  (T at 22).  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the application date (August 22, 2008) through the date of the ALJ's decision (July 13, 2010), and was therefore not entitled to benefits. (T at 23).

As noted above, the ALJ's decision became the Commissioner's final decision on December 10, 2010, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 5-8).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  He offers three (3) principal arguments in support of his position.  First, Plaintiff argues that the ALJ failed to properly apply the treating physician's rule. Second, Plaintiff contends that the ALJ should have consulted a vocational expert. Third, Plaintiff contends the ALJ improperly afforded weight to the non-medical opinion of a disability analyst. Each argument will be

addressed in turn.

### a.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, Plaintiff's treating physician, Dr. Mario Magsino, indicated that Plaintiff "should avoid heaving lifting more than 15 pounds pushing or pulling." (T at 251). The ALJ afforded "greatest weight" to Dr. Magsino's opinion and concluded that Plaintiff retained the RFC to lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

and could therefore perform light work. (T at 18).

Plaintiff contends that the ALJ's RFC finding was inconsistent with Dr. Magsino's opinion and should therefore be reversed.   This Court finds Plaintiff's argument understandable, but ultimately unpersuasive.   Plaintiff reads Dr. Maginso's opinion as stating that Plaintiff was not capable of lifting more than 15 pounds. If that was the case, Plaintiff would be precluded from performing light work. See 20 C.F.R. § 416.967 ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

However, Dr. Magsino indicated that Plaintiff should "*avoid* heaving lifting" followed by a reference to 15 pounds (T at 251)(emphasis added).   Dr. Magsino did not opine that Plaintiff was completely incapable of lifting that amount (or that he was incapable of lifting more than that) or that Plaintiff could not lift that amount (or greater amounts) on an occasional basis.   In a subsequent note, Dr. Magsino used the same basic formulation, stating that Plaintiff "should avoid heaving lifting, pushing, or pulling because of his arthritis." (T at 252).

The ALJ could reasonably have concluded that Dr. Magsino's opinion was consistent with, and generally supportive of, a finding that Plaintiff could *occasionally* lift 20 pounds. To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982)("Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive. We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence.")(citations

omitted); <u>White v. Comm'r of Social Security</u>, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008)(noting that where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." (citing <u>Veino v. Barnhart</u>, 312 F.3d 572, 586(2d Cir. 2002)).

Moreover, the balance of the medical evidence also supports the ALJ's conclusion regarding Plaintiff's ability to occasionally lift 20 pounds.  MRI and x-ray results were generally mild or unremarkable. (T at 157-58, 178, 190, 206, 254).  Clinical findings consistently showed normal stance and gait, negative straight leg raising tests, normal range of motion, and a lack of atrophy. (T at 128-29, 160, 163, 167, 182, 189-90, 193, 303, 328-29).  Dr. Ganesh, a consultative examiner, assessed no gross limitation as to sitting, standing, or walking; and a "mild to moderate limitation lifting, carrying, pushing, and pulling." (T at 214).

Accordingly, this Court finds no reversible error with regard to the ALJ's assessment of the treating physician's opinion and the ALJ's conclusion that Plaintiff could occasionally lift up to 20 pounds was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

      **b.   Vocational Expert**

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §

404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66

(1983). The second part of this process is generally satisfied by referring to the applicable

rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P,

Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601,

604 (2d Cir.1986).

     The function of the Grids was succinctly summarized by the court in Zorilla v.

Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the
> sequential evaluation process described above, the
> Commissioner, under appropriate circumstances, may rely on
> the medical-vocational guidelines contained in 20 C.F.R. Part
> 404, Subpart P, App. 2, commonly referred to as "the Grid."
> The Grid takes into account the claimant's residual functional
> capacity in conjunction with the claimant's age, education and
> work experience. Based on these factors, the Grid indicates
> whether the claimant can engage in any other substantial
> gainful work which exists in the national economy. Generally
> the result listed in the Grid is dispositive on the issue of
> disability.

Id.

     "The Grid classifies work into five categories based on the exertional requirements

of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and

very heavy, based on the extent of requirements in the primary strength activities of sitting,

standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

education, and prior work experience, the Grid yields a decision of "disabled" or "not

disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

     If the claimant has nonexertional impairments, the ALJ must determine whether

those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. Specifically, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rules 202.17 and 202.10 based upon Plaintiff's age, education, work experience, and ability to perform the full range of unskilled light work." (T at 23). The ALJ concluded that Plaintiff had no non-exertional limitations and, thus, the testimony of a vocational expert was not necessary. (T at 23).

Plaintiff contends that the ALJ erred because his work capacity is significantly diminished by a non-exertional impairment; namely, difficulty bending. This Court finds Plaintiff's argument unpersuasive. The "mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Here, Plaintiff testified that he wears a back brace and has difficulty bending. (T at 37-38, 40). In a treatment note, Dr. Constant, a treating physician, described Plaintiff as having "chronic" low back

pain and recommended "back brace and exercise." (T at 329).   However, no medical provider assessed any limitation arising from Plaintiff's alleged difficulty bending; let alone a limitation that significantly diminished his ability to perform light work.   The record is limited to Plaintiff's complaints of pain upon bending and a single treatment note regarding a back brace.   Under these circumstances, this Court finds no reversible error in the ALJ's decision to rely upon the Grids without consulting a vocational expert.

### c.      Consideration of Non-Medical Opinion

A non-examining disability analyst identified as "Sacharov, D" completed an assessment of Plaintiff's physical RFC in January of 2009.   The analyst opined that Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk/sit for 6 hours in an 8-hour workday, and push/pull in unlimited amounts. (T at 217).

The ALJ afforded the opinion of this analyst "minimal weight." (T at 20).   Plaintiff contends the ALJ should not have assigned any weight whatever to the analyst's assessment.   There is support for Plaintiff's argument.   "Sacharov, D" is identified a "single decision maker" ("SDM"). (T at 221).   SDMs are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890–01, 2006 WL 2283653.

On May 19, 2010, Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, issued a memorandum citing POMS Instruction DI 24510.050C[5] and instructing all ALJs that RFC determinations by SDMs should not be

---

[5]The "POMS" is the Social Security Administration's "Program Operations Manual System," an internal manual used by Social Security employees to process disability claims.

afforded any evidentiary weight at the administrative hearing level.[6]

Numerous courts have concluded, per this memorandum, that assigning any evidentiary weight to an SDM's opinion is an error.  See Yorkus v. Astrue, No. 10-2197, 2011 WL 7400189, at *5 (E.D. Pa. Feb. 28, 2011)(collecting cases); Foxx v. Astrue, No. 08–00403–KD–B, 2009 WL 2899048, at *7 (S.D.Ala. Sept.3, 2009) ("[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources.") (quoting Botton v. Astrue, 07-CV-612, 2008 WL 2038513 (M.D.Fla., May 12, 2008)).

However, in this particular case, this Court finds that the ALJ's error was harmless. The ALJ afforded "minimal weight" to the SDM's decision; finding it "outweighed by the treating physician's opinion." (T at 20).  The ALJ did not accept the SDM's assessment of Plaintiff's RFC, adopting a more restrictive view of Plaintiff's ability to lift, carry, push, and pull.  For the reasons outlined above, the ALJ's conclusion was adequately supported by the medical record as a whole, including the treating physician's opinion and consulative examiner's assessment.  As such, this Court has no difficulty in concluding that the ALJ would have reached the same conclusion even if she had assigned no evidentiary weight to the SDM's assessment. Cf. Yorkus, 2011 WL 7400189 ("Because the ALJ placed great weight on the SDM's RFC assessment and the only other evidence was the ALJ's review of Plaintiff's treatment records, we cannot say that the ALJ would have come to the same conclusion if he had not relied on the RFC assessment. Therefore, the ALJ's reliance on

---

[6]The ALJ's decision in this case was issued on July 13, 2010. (T at 23).

the assessment was not harmless error and we recommend that the case be remanded for further proceedings and [instruct] the ALJ not to consider the SDM's RFC assessment.").

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider and the consultative examiners and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. Although the ALJ erred it assigning any weight to the SDM's assessment, this error was harmless for the reasons stated above.  In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   August   13, 2012

14

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge